IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELAINE DENNIS, and COURTNEY WHITE, <br><br> Plaintiffs, <br><br> v. <br><br> GOOD DEAL CHARLIE, INC., d/b/a Overstock Furniture & Mattress, JONATHAN MCILLWAIN, SOUTHEASTERN LIQUIDATORS LLC, STRATEGIC PARTNER HOLDING, LLC, and CHEAP SLEEP, L.L.C., <br><br> Defendants. | Case No. 20-CV-00295-GKF-JFJ |

## OPINION AND ORDER

Before the court are the following motions to dismiss: (1) Motion to Dismiss [Doc. 34] of defendant Jonathan McIllwain; (2) Motion to Dismiss [Doc. 35] of defendants Good Deal Charlie, Inc., d/b/a Overstock Furniture & Mattress ("Overstock"), and McIllwain; (3) Motion to Dismiss [Doc. 39] of defendant Cheap Sleep, L.L.C.; (4) Motion to Dismiss [Doc. 46] of defendant Southeastern Liquidators LLC; and (5) Motion to Dismiss [Doc. 61] of defendant Strategic Partner Holding, LLC. For the reasons outlined below, the court grants the motion filed by defendant McIllwain [Doc. 34] and denies the remaining motions [Doc. 35; Doc. 39; Doc. 46; Doc. 61].

**I. Background**

Plaintiff Elaine Dennis filed this putative class action on June 18, 2020 [Doc. 2] and, on August 27, 2020, plaintiffs Dennis and Courtney White filed an Amended Class Action Complaint [Doc. 31]. The lawsuit is brought "on behalf of all persons who purchased mattresses sold by Good Deal Charlie, Inc., d/b/a Overstock Furniture & Mattress, in any of their regularly maintained retail locations in Oklahoma, specifically Tulsa and Lawton." [Doc. 31, p. 2 ¶ 1]. In support, the

plaintiffs allege the following: Overstock and McIllwain (collectively, "Seller Defendants")[1] represented and sold mattresses "as new, 'scratch and dent' and/or factory second or irregular mattresses" when, in reality, the mattresses "were previously used, had not been adequately cleaned and sanitized, were not clearly and properly labeled as 'used,' and were unfit for consumer use." [Doc. 31, p. 2 ¶ 2]. In order to sell these used mattresses, Seller Defendants "train their sales staff to illegally deceive their customers" about the condition of the mattresses in a variety of ways, and store and present the mattresses in such a way as to "conceal the used, dirty and stained condition of the mattresses . . . ." [Doc. 31, pp. 2–5 ¶¶ 4–7, 10, 29]. When customers unpackage their mattresses at home, realize the condition of the mattresses, and try to return them, Seller Defendants refuse to take the mattresses back or refund the customers. [Doc. 31, p. 6 ¶ 15].

Specifically, Dennis alleges that her experience with Seller Defendants went as follows: Dennis bought a mattress for $544.94 from Seller Defendants' Lawton, Oklahoma store on January 3, 2020. [Doc. 31, p. 11 ¶ 34]. A sales person who approached Dennis said "that the mattresses are 'new' but are factory 'scratch and dents.'" Dennis asked if the mattresses were used, but was told "no." [Doc. 31, p. 11 ¶ 35]. "Dennis was not allowed to properly inspect the mattresses or see any tags because the mattresses were bagged, are too heavy and cumbersome to move, and because Defendant Overstock's handlers quickly moved the mattress she purchased." [Doc. 31, pp. 11–12 ¶ 35]. When "Dennis unwrapped the purchased mattress at her home, she observed that it was dirty and had only a tag with a manufacturing date of August 2015." [Doc.

---

[1] Plaintiffs allege that "McIllwain is an officer of Defendant Overstock and in that capacity is responsible for the purchase of liquidated, used, and soiled mattresses to be resold by Overstock." [Doc. 31, p. 14 ¶ 46]. Further, "McIllwain is in absolute control of Overstock such that Overstock has no identity separate from McIllwain. Upon information and belief, McIllwain commingles personal and business expenses and finances with Overstock." [Doc. 31, p. 14 ¶ 47].

31, p. 12 ¶ 36]. When Dennis returned to the store on January 6, 2020 to ask for a refund, "Overstock refused to take back the mattress or provide a refund . . . ." [Doc. 31, p. 12 ¶ 37].

Plaintiff White alleges she bought a mattress for approximately $515 from the Overstock store in Tulsa, Oklahoma. [Doc. 31, p. 12 ¶ 38]. The sales staff told White that the mattresses "were 'new' and from 'the factory.'" [Doc. 31, p. 12 ¶ 38]. White financed the mattress through a third-party finance company suggested by Overstock; nothing in the finance agreement indicated that the mattress was used. [Doc. 31, p. 13 ¶ 39]. When she got home, White "realized that the mattress bag was not sealed at both ends, did not have all the mattress tags she expected for a new mattress, nor did it have any tag indicating that the mattress was used," and "the mattress was stained on the side and edge, and appeared to have been previously used." [Doc. 31, p. 13 ¶ 40]. Disgusted, White never used the mattress and abandoned it when she moved out-of-state. [Doc. 31, p. 13 ¶ 41].

Regarding the remaining defendants, the plaintiffs allege the following: the Seller Defendants "purchased the improperly labeled and un-sanitized used mattresses from" Southeastern Liquidators LLC ("Southeastern"), Strategic Partner Holding, LLC ("Strategic"), and Cheap Sleep, L.L.C. ("Cheap Sleep") (collectively, "Distributor Defendants"). The Distributor Defendants "distribute[] and sell[] used liquidation mattresses to Overstock, which are soiled, stained and unfit for consumer purchase or use." [Doc. 31, pp. 13–14 ¶¶ 43–45]. Further, the Distributor Defendants "knew or should have known they were selling improperly labeled and un-sanitized used mattresses to the Seller Defendants who would in turn resell those used mattresses as is and without proper labeling or disclosure to consumers about the true nature and condition of those mattresses." [Doc. 31, p. 2 ¶ 3].

Plaintiffs claim that potential class members include "[a]ll persons and entities that have purchased used mattresses from Overstock in the state of Oklahoma," and allege that all

requirements of Federal Rule of Civil Procedure 23 are met.  [Doc. 31, pp. 14–17 ¶¶ 48–54].

Plaintiffs bring eight counts against the following defendants:

- Count 1:  Statutory Deceit (Okla. Stat. tit. 76, §§ 1–4)—Seller Defendants
- Count 2:  Negligent Misrepresentation—Seller Defendants
- Count 3:  Unjust Enrichment—Seller Defendants and Distributor Defendants
- Count 4:  Violation of Oklahoma Consumer Protection Act (Okla. Stat. tit. 15, §§ 751–765)—Seller Defendants
- Count 5:  Negligence *Per Se*—Seller Defendants
- Count 6:  Aiding and Abetting Deceit—Distributor Defendants
- Count 7:  Negligence—Seller Defendants
- Count 8:  Breach of Implied Contract—Seller Defendants

[Doc. 31, pp. 17–30 ¶¶ 55–119].  In summary, the Seller Defendants are defendants in all Counts but Count 6, and the Distributor Defendants are defendants in only Counts 3 and 6.  The plaintiffs seek punitive damages from all defendants.  [Doc. 31, p. 30 ¶ 121].

The defendants move to dismiss the plaintiffs' Amended Class Action Complaint on various grounds:  (1) all defendants move to dismiss the case for lack of subject matter jurisdiction [*see* Doc. 35; Doc. 39; Doc. 61];[2] (2) McIllwain moves to dismiss all counts against him for failure to state a claim upon which relief can be granted in light of Okla. Stat. tit. 12, § 682(B) (suits against officers, directors, and shareholders) [Doc. 34]; (3) Strategic moves to dismiss Count 3 and Count 6 for lack of personal jurisdiction [Doc. 61, p. 8];[3] and (4) Southeastern moves to dismiss Counts 3 and 6 for failure to state a claim upon which relief can be granted [Doc. 46].  The court addresses each argument in turn.

---

[2] Southeastern does not focus on this issue in its motion, but notes that the Amended Class Action Complaint would be dismissed in its entirety should the argument prove successful. [Doc. 46, p. 2 n.1].

[3] Cheap Sleep raises a personal jurisdiction argument for the first time in its reply. "[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (alteration in original) (quoting *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)).  Accordingly, Cheap Sleep's personal jurisdiction argument shall not be considered.

## II. Legal Standards

### A. Rule 12(b)(1) Standard

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Therefore, federal courts "must have a statutory basis for their jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (citing *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (citing *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994)).

Rule 12(b)(1) permits a party to seek dismissal of a case for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Challenges to subject-matter jurisdiction under this rule generally take "one of two forms: (1) facial attacks; and (2) factual attacks." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). Facial attacks "merely challenge the sufficiency of the complaint, requiring the . . . court to accept the allegations in the complaint as true." *Id.* Factual attacks go beyond the allegations in the complaint and challenge the facts upon which subject-matter jurisdiction depends. *See id.* In such situations, the court has "wide discretion" to consider documentary and testimonial evidence. *See id.* The court need not convert a motion to dismiss under Rule 12(b)(1) to a motion for summary judgment under Rule 56 unless the "resolution of the jurisdictional question is intertwined with the merits of the case." *See id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

### B. Rule 12(b)(2) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(2), a court must determine whether the plaintiff has alleged sufficient facts to establish the court's personal jurisdiction over

5

the defendant. *See* Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing that the court has personal jurisdiction over all defendants. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). However, where, as here, the question of personal jurisdiction is disputed in the preliminary stages of litigation, "the plaintiff need only make a *prima facie* showing of jurisdiction to defeat the motion [to dismiss]." *AST Sports Sci., Inc. v. CLF Dist. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court will accept as true the allegations in a plaintiff's complaint, and all factual disputes will be resolved in the plaintiff's favor. *Intercon Inc. v. Bell Atl. Internet Sols.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

"To show personal jurisdiction over a nonresident in a diversity action, [the plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics*, 946 F.3d at 1228 (citing *Walden v. Fiore*, 571 U.S. 277, 282 (2014)). "Oklahoma's long-arm statute authorizes courts to 'exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.'" *Dental Dynamics*, 946 F.3d at 1229 (quoting Okla. Stat. tit. 12, § 2004(F)). As neither party raises any objection based on the Oklahoma constitution, "the analysis collapses into a single due process inquiry." *Dental Dynamics*, 946 F.3d at 1229 (citing *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013)).

The Due Process Clause authorizes personal jurisdiction if two elements are met. "First, a defendant must have 'purposefully established minimum contacts within the forum state.'" *Dental*

6

*Dynamics*, 946 F.3d at 1229 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The "minimum contacts" standard can be satisfied in either of two ways: First, the court may exert specific jurisdiction over a defendant who has "purposefully directed his activities at residents of the forum," provided "the litigation results from alleged injures that arise out of or relate to those activities." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (internal citations and quotation marks omitted). Alternatively, the court may maintain general personal jurisdiction over a defendant who has maintained continuous and systematic general business contacts with the forum state. *Id.*

Even if the minimum contacts test is met, the court must "assess whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (citing *Old Republic*, 877 F.3d at 909). To do so, the court considers the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Dental Dynamics*, 946 F.3d at 1229 (citing *Old Republic*, 877 F.3d at 909). A defendant's showing under these factors operates on a "sliding scale." *AST Sports Sci.*, 514 F.3d at 1061. "The weaker a plaintiff's showing with respect to minimum contacts, 'the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *Dental Dynamics*, 946 F.3d at 1229 (quoting *AST Sports Sci.*, 514 F.3d at 1061).

## C. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps. Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)). In making this assessment, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City & County of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191). Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Legal Analysis

## A. Subject Matter Jurisdiction

In their Amended Class Action Complaint, the plaintiffs allege the following with regard to subject matter jurisdiction:

> This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act), in that (i) there is complete diversity (Plaintiffs are or were citizens of Oklahoma and Defendants are domiciled and incorporated in Arkansas and Tennessee), (ii) the amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Class. This Court also has subject matter jurisdiction over this class action pursuant to 28 U.S.C. §1332(a)

> because the Plaintiffs and Defendants are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs. [ ] This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d) [(The Magnuson-Moss Warranty Act)].

[Doc. 31, pp. 9–10 ¶¶ 24–25]. Defendants challenge all three of plaintiffs' proffered bases: (1) the Class Action Fairness Act ("CAFA"); (2) diversity jurisdiction under 28 U.S.C. § 1332(a); and (3) the Magnuson-Moss Warranty Act.

CAFA provides that federal "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2). "[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 . . . ." 28 U.S.C. § 1332(d)(6). At this early stage, the plaintiffs have sufficiently alleged diversity of citizenship to meet 28 U.S.C. § 1332(d)(2)'s requirements, as well as aggregated claims that exceed $5,000,000. Indeed, the defendants do not challenge those aspects of jurisdiction under CAFA. Instead, the defendants attack aspects of plaintiffs' proposed class, arguing that the plaintiffs have failed to satisfy Rule 23's commonality, typicality, predominance, and ascertainability requirements. [Doc. 35, pp. 15–23]. Plaintiffs counter that such arguments are appropriate at the class certification stage, but for now, they have adequately alleged subject matter jurisdiction under CAFA.

The parties have not cited, and the court has not found, any Tenth Circuit precedent addressing the application of Rule 12(b)(1) to dismiss a proposed class action because it cannot meet Rule 23's requirements. Although this court and other courts in this circuit have addressed motions to dismiss class allegations under Rule 12(b)(6) and Rule 12(f), Rule 12(b)(1) appears to

be used in this context exclusively to challenge Article III standing, diversity of citizenship, or amount in controversy. None of these aspects are challenged here.

Defendants have not persuaded the court they are entitled to dismissal pursuant to Rule 12(b)(1). The plaintiffs have adequately alleged that they satisfy the jurisdictional requirements of CAFA (diversity of citizenship and aggregated claims that exceed $5,000,000). Therefore, the defendants' Rule 12(b)(1) argument is rejected. As this is the only ground for dismissal raised by Cheap Sleep, its motion is denied. [Doc. 39]. For the same reason, Overstock's motion is also denied. [Doc. 35]. Further, as plaintiffs have adequately alleged that the court has subject matter jurisdiction under CAFA, the court need not consider defendants' other arguments at this time.

**B. Rule 12(b)(6) Motion filed by McIllwain**

McIllwain argues that the plaintiffs cannot state a claim for which relief can be granted because Okla. Stat. tit. 12, § 682(B) shields him until after a judgment is rendered against Overstock, and that judgment returns unsatisfied. Section 682(b) states the following:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego. Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation, not within the scope of their role as an officer, director or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrence.

Okla. Stat. tit. 12, § 682(B). Based on this language, McIllwain contends that the plaintiffs' suit is premature and must be dismissed.[4]

---

[4] Because this is a diversity case, substantive issues are controlled by state law and procedural issues are controlled by federal law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute that Oklahoma law controls.

10

Although § 682(B) prohibits suits based solely on a person's status as an officer, director or shareholder of a corporation, "it does not prevent a person from being sued directly for his own conduct." *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492, at *5 (N.D. Okla. Dec. 14, 2017). This exception, found in the last sentence of the section, does not preclude imposition of personal tort liability on an officer, director, or shareholder for the person's acts outside the scope of his or her role as an officer, director, or shareholder. *See Romero v. Pro Sec., LLC*, No. CIV-16-595-R, 2017 WL 1929663, at *2 (W.D. Okla. May 9, 2017).

McIllwain argues that the Amended Complaint seeks to hold him liable solely for actions taken within the scope of his role as an officer of Overstock and, therefore, § 682(B) precludes liability. [Doc. 34]. In response, the plaintiffs contend they have stated a claim against McIllwain for his individual conduct. [Doc. 53].

The Amended Complaint includes the following allegations: "McIllwain is the Chief Executive Officer, owner, and member of the board of Defendant Overstock *and the alter ego of Overstock*. McIllwain *used Overstock* as a device with which to perpetuate a fraud upon Oklahoma consumers." [Doc. 31, p. 8 ¶ 20 (emphases added)]. In addition, "McIllwain is an officer of Defendant Overstock *and in that capacity* is responsible for the purchase of liquidated, used, and soiled mattresses to be resold by Overstock." [Doc. 31, p. 14 ¶ 46 (emphasis added)]. Finally, "McIllwain *is in absolute control of Overstock such that Overstock has no identity separate from McIllwain*. Upon information and belief, *McIllwain commingles personal and business expenses and finances with Overstock*. The Overstock Board of Directors is composed almost exclusively of McIllwain's relatives, including both of McIllwain's parents, his wife, and his father-in-law." [Doc. 31, p. 14 ¶ 47 (emphases added)].

Considering all of the allegations, the court finds that § 682(B)'s exception is inapplicable here as the plaintiffs do not allege that McIllwain took tortious actions outside of his role as an

11

officer of Overstock. Specifically, the plaintiffs have "not asserted an individual claim" because the claims against McIllwain "mirror those against [Overstock]; the [Amended Class Action Complaint] asserts [that Overstock] is an alter-ego of [McIllwain]; and the [Amended Class Action Complaint] does not allege different conduct as between [Overstock] and [McIllwain]." *Hetronic Intern., Inc. v. Hetronic Germany GmbH*, 2015 WL 6835428, *3 (W.D. Okla. Nov. 6, 2015) (citing *ZHN, LLC v. Randy Miller, LLC*, 2015 WL 1033080, *2 (W.D. Okla. March 9, 2015)). The plaintiffs have not yet obtained judgment against Overstock, nor has judgment been returned unsatisfied. Accordingly, the claim against McIllwain must be dismissed as premature. *See Okla. Digit. Abstract, LLC v. Imersion Glob. Inc.*, No. 18-CV-398-TCK-JFH, 2019 WL 6329342, at *4 (N.D. Okla. Nov. 26, 2019) (granting a Rule 12(b)(6) motion because the plaintiff's claims against the company's officer "mirror[ed] those against [the company]; the complaint assert[ed that] the company [wa]s the alter-ego of [the officer]; and the complaint d[id] not allege different conduct as between the company and [the officer]"); *see ZHN*, 2015 WL 1033080, at *2 (granting a Rule 12(b)(6) motion where the counter-claims alleged against the member mirrored those against the limited liability company, the member was the sole member of the limited liability company and acted on the company's behalf when he signed the contracts at issue, and the plaintiff alleged that the limited liability company was the alter-ego of the member and did not allege any individual conduct that differed from the company's conduct). [5]

---

[5] *Compare Okla. Digit. Abstract, LLC v. Imersion Glob. Inc.*, No. 18-CV-398-TCK-JFH, 2019 WL 6329342, at *4 (N.D. Okla. Nov. 26, 2019); *ZHN, LLC v. Randy Miller, LLC*, No. CIV-12-1289-M, 2015 WL 1033080, at *2 (W.D. Okla. Mar. 9, 2015) (same), *with Capps v. Bullion Exch., LLC*, No. 18-CV-00162-GKF-FHM, 2019 WL 7605825, (N.D. Okla. 2019) (denying a Rule 12(b)(6) motion because of § 682(B)'s exception); *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, No. CIV-14-650-C, 2015 WL 6835428, at *3–4 (W.D. Okla. Nov. 6, 2015) (same); *Phoenix*, 2017 WL 6397492, at *5 (same); *Northstar Mgmt., Inc. v. Vorel*, 2019 WL 7753449, (W.D. Okla. 2019) (same); *Tyree v. Cornman*, 453 P.3d 497 (Okla. Civ. App. 2019) (same); *Sauders v. Mangum Nursing Ctr., LLC*, 377 P.3d 180 (Okla. Civ. App. 2016) (holding that § 682(B) did not apply because the claims arose before § 682 was amended, but if it did, dismissal

### C. Rule 12(b)(2) Motion filed by Strategic

Strategic lays out its personal jurisdiction argument in two sentences: "Personal jurisdiction fails, as well. This Defendant does not have the requisite contacts with the Plaintiff or the state of Oklahoma to avail itself of personal jurisdiction of this Court." [Doc. 61, p. 8]. In its reply, Strategic adds that "there is no connection between the allegations against [Strategic] and the causes of action asserted by Plaintiffs, i.e. the counts against SPH do not 'arise from' the alleged contacts with the forum." [Doc. 84, p. 2 n.1].

"If personal jurisdiction is evaluated by the district court based only on the complaint and affidavits, 'a *prima facie* showing of personal jurisdiction' is sufficient." *Niemi v. Lasshofer*, 770 F.3d 1331, 1347 (10th Cir. 2014) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). The plaintiffs have pled that Strategic "purposefully directed [its] activities at residents of the forum," *Benton*, 375 F.3d at 1075, because Strategic allegedly "acquires, warehouses, sells and distributes used mattresses at the direction of McIllwain and Overstock, *including to the Tulsa and Lawton, OK, locations*," [Doc. 31, p. 8 ¶ 22 (emphasis added)]. This litigation "results from" alleged injuries that "ar[o]se out of" the sale of used mattresses Strategic allegedly acquired, sold, and distributed. *Benton*, 375 F.3d at 1075. Further, Strategic has offered no reasons why the exercise of jurisdiction here would "offend traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229. Therefore, the plaintiffs have made a *prima facie* showing of personal jurisdiction, and Strategic's Rule 12(b)(2) motion is denied.

---

was not required because allegations of direct participation trigger the exception); *Maree v. Neuwirth*, 374 P.3d 750, 754 (Okla. 2016) (allegations of direct negligence against members of a limited liability company would have amounted to a cognizable legal theory based on §§ 682(B) and (C)); *see generally* M. Thomas Arnold & H. Wayne Cooper, 3A Vernon's Okla. Forms 2d, Bus. Org § 2.07. Limited liability—Piercing the limited liability veil in Oklahoma corporations and limited liability companies (2020).

13

**D. Rule 12(b)(6) Motion filed by Southeastern**

Southeastern argues that the plaintiffs have failed to state a claim upon which relief can be granted. Specifically, Southeastern contends that the plaintiffs cannot succeed on their unjust enrichment claim (Count 3) against Southeastern because: "(1) Plaintiffs cannot show that it was Southeastern's mattresses that they purchased from Defendant Sellers, and (2) Plaintiffs cannot show that Southeastern received any benefit whatsoever from Plaintiffs' purchase of mattresses from Defendant Sellers." [Doc. 46, pp. 4–5]. Regarding the aiding and abetting deceit claim (Count 6), Southeastern argues that the plaintiffs cannot sustain the claim because: "(1) it is not pled with particularity as required by Fed. R. Civ. P. 9(b)," and (2) the plaintiffs have failed to allege that Southeastern knew about the Seller Defendants' conduct or that it gave "substantial assistance or encouragement" to the Seller Defendants. [Doc. 46, pp. 9–12]. Southeastern also contends that both of these claims constitute "impermissible group pleading" based on "global allegations" about the Distributor Defendants generally, and that the plaintiffs cannot cure these defects even if they were allowed time to amend. [Doc. 46, pp. 7–8, 12–13].

1. Unjust Enrichment (Count 3)

"Unjust enrichment is a 'recognized ground for recovery in Oklahoma' and 'describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable.'" *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1244 (N.D. Okla. 2011) (quoting *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2000)). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *St. John Med. Ctr., Inc. v. Hodges*, No. 12-CV-523-GKF-PJC, 2014 WL 12543046, at *2 (N.D. Okla. Feb. 26, 2014) (citing *Childs*, 781 F. Supp. 2d at 1244). "To demonstrate a claim for unjust enrichment, the plaintiff must prove 'enrichment to another coupled

with a resulting injustice.'" *St. John Med. Ctr.*, 2014 WL 12543046, at *2 (quoting *Childs*, 781 F. Supp. at 1244); *see also Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir. 1991) (same) (citing *Teel v. Public Serv. Co.*, 767 P.2d 391, 398 (Okla. 1985)).

Accepting "all the well-pleaded allegations of the complaint as true" and construing "them in the light most favorable to the plaintiff[s]," the plaintiffs have sufficiently pled an unjust enrichment claim. *Waller*, 932 F.3d at 1282. The plaintiffs allege that "the Seller Defendants purchase these mattresses 'as is' from the Distributor Defendants for roughly between $40 to $350," and then sell them to customers like the plaintiffs at a large "mark-up." [Doc. 31, pp. 2, 5, 8, 14 ¶¶ 3, 9, 21, 44]. Southeastern argues that the plaintiffs cannot prove that it was enriched because the plaintiffs paid the Seller Defendants for the mattresses, rather than the Distributor Defendants. But the plaintiffs' allegations infer, in a reasonable manner, that part of the payment for the mattress benefits Southeastern because Seller Defendants pay it between $40 and $350 per mattress. [Doc. 31, pp. 21–22 ¶ 76]. The plaintiffs allege that this enrichment is coupled with an injustice for the plaintiffs, as well as similarly situated consumers, because "Plaintiffs and the Class Members were given and received the mattresses with the expectation that the mattresses would perform as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable." [Doc. 31, p. 22 ¶ 77]. Further, although the plaintiffs have alleged that they bought mattresses generally—meaning the mattresses could have been sold to Seller Defendants by either Strategic or Cheap Sleep rather than Southeastern—plaintiffs are alleging that thousands of potential class members bought mattresses, and that the three Distributor Defendants provided those mattresses. Taking the plaintiffs' well-plead allegations as true and construing them favorably for the plaintiffs, the plaintiffs have reasonably alleged that class members bought mattresses provided by Southeastern. Therefore, Southeastern's Rule 12(b)(6) motion regarding Count 3 is denied.

2. Aiding and Abetting Deceit (Count 6)

Count 6 alleges that the Distributor Defendants aided and abetted the Seller Defendants' Statutory Deceit (Count 1). Although Oklahoma provides a statutory basis for deceit,[6] the statute still "rests upon fraud," *Jewell v. Allen*, 109 P.2d 235, 237 (Okla. 1940), meaning a plaintiff must abide by the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), *see* Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), "[a] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)), *abrogated on other grounds*, *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019). "Rule 9(b)'s purpose is 'to afford [a] defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (second alteration in original) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)).

"The elements of aiding and abetting common law fraud are generally recognized to be (1) the existence of an underlying fraud; (2) the aider and abettor's knowledge of this fraud, and; (3) substantial assistance by the aider and abettor in perpetration of the fraud." *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1197 (N.D. Okla. 2020) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d

---

[6] In a tort action, Oklahoma courts apply the law of the state with the most significant relationship to the occurrence and to the parties. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citing *Childs v. Okla. ex rel. Oklahoma State Univ.*, 848 P.2d 571, 578 n.41 (Okla. 1993)). Neither party argues that any law other than Oklahoma law applies to this issue.

273, 292 (2d Cir. 2006); *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *8 (E.D.N.Y. Sept. 20, 2000)). Assuming for the purpose of this motion that Oklahoma recognizes a claim for aiding and abetting deceit,[7] the plaintiffs have sufficiently alleged these elements in a manner that satisfies Rule 9(b).

Regarding Southeastern's knowledge, the plaintiffs allege the following: the Distributor Defendants sell "improperly labeled and un-sanitized used mattresses" to the Seller Defendants. [Doc. 31, pp. 2, 13–14 ¶¶ 3, 43–45]. "When the mattresses come into the store from the Distributor Defendants, they typically have been re-bagged -- placed into a mattress bag in order to create the appearance that the mattresses are factory fresh or are coming from the factory." [Doc. 31, p. 4 ¶ 7]. Although "Federal law" and "Oklahoma State law . . . restrict[] the sale of used bedding and require[] that it can only be sold by a properly licensed re-seller and only if such bedding is properly sanitized and clearly labeled as used," the mattresses still "have not been properly cleaned or sanitized," nor do they "contain the required label." [Doc. 31, p. 6 ¶¶ 13–14]. Seller Defendants publicly advertise online and in their stores what appear to be new mattresses, but in reality, they are the "used, soiled, and unsanitized" mattresses received from the Distributor Defendants. [Doc. 31, pp. 2–5, 11 ¶¶ 4, 10, 11, 30–32].

Based on this outlined scheme, the plaintiffs allege that the "Distributor Defendants knew or should have known that the Seller Defendants were committing a fraud and deceit upon its customers and violating Oklahoma state law in so doing." [Doc. 31, p. 27 ¶ 101]. Accepting "all

---

[7] *See Almeida*, 471 F. Supp. 3d at 1196 ("The Oklahoma Supreme Court has neither recognized nor declined to recognize a cause of action for aiding and abetting fraud."); *see also* [Doc. 72, p. 5 ¶ 9 n.4 ("Southeastern in no manner concedes that Oklahoma recognizes a viable claim for aiding and abetting fraud, and Southeastern reserves the right to challenge the viability of Plaintiffs' aiding and abetting fraud claim on this basis at a later, appropriate time in this case in accordance with Federal Rule of Civil Procedure 12(b)(6), Federal Rule 12(c), Federal Rule 56 and any other applicable and relevant law.")]

the well-pleaded allegations of the complaint as true" and construing "them in the light most favorable to the plaintiff[s]," *Waller*, 932 F.3d at 1282, the plaintiffs have sufficiently pled that Southeastern had knowledge of the fraud, especially in light of Rule 9(b)'s admonition that knowledge need only be alleged "generally," Fed. R. Civ. P. 9(b).  The plaintiffs have outlined a scheme by which Southeastern knowingly sold used mattresses that were improperly sanitized and labeled to Overstock, after which Overstock publicly advertised and sold the mattresses as new.  Based on these allegations, the plaintiffs have sufficiently alleged knowledge.

Regarding substantial assistance, the plaintiffs similarly allege that the "Distributor Defendants provided substantial assistance to the Seller Defendants in the commission of their wrongs" by selling used mattresses to the Seller Defendants for relatively low prices, that were then sold at marked-up prices to customers.  [Doc. 31, pp. 2, 5, 8, 14, 27 ¶¶ 3, 9, 21, 44, 102].  The court finds and concludes that plaintiffs have sufficiently alleged that Southeastern provided substantial assistance in the alleged scheme.  These allegations afford Southeastern fair notice of plaintiffs' claims and the factual ground on which they are based.  As such, Southeastern's Rule 12(b)(6) motion regarding Count 6 is denied.[8]

---

[8] Southeastern's argument that the plaintiffs' pleadings are impermissible "group pleadings" is unpersuasive because the plaintiffs have identified and alleged only three parties as Distributor Defendants, have named each of them, and have alleged specifically that Seller Defendants buy used mattresses from the three Distributor Defendants.  *Cf. Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (granting a Rule 12(b)(6) motion because the complaint contained "a litany of diverse and vague alleged acts . . . with zero details or concrete examples" against "a large group of collective 'defendants,' which include[d] fifty unknown Doe defendants" alongside the two named defendants), *and Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (granting a Rule 12(b)(6) motion because the complaint generically stated that the defendants, who ranged from the Director of the Oklahoma Department of Human Services to local social workers in the daycare in question, collectively committed the alleged unconstitutional acts at the daycare).

**IV. Conclusion**

WHEREFORE, Motion to Dismiss [Doc. 34] filed by defendant Jonathan McIllwain is GRANTED. Defendant McIllwain is dismissed from the suit.

The remaining motions to dismiss [Doc. 35; Doc. 39; Doc. 46; Doc. 61] are DENIED.

IT IS SO ORDERED this 3rd day of March, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE